# PROFESSIONAL SERVICES AGREEMENT
# FOR
# POET LAUREATE SERVICES

| | | |
|---|---|---|
| STATE OF TEXAS | § | |
| | § | |
| COUNTY OF BEXAR | § | NEPHTALI DE LEON |
| | § | |
| CITY OF SAN ANTONIO | § | |

This Agreement is entered into by and between the City of San Antonio, a Texas Municipal Corporation ("City") acting by and through its Executive Director of the City's Department of Arts & Culture and Nephtali De Leon ("Contractor"), both of which may be referred to collectively as the "Parties."

The Parties agree, and by the execution of this Agreement are bound, to the mutual obligations contained and to the performance and accomplishment of the tasks described.

## I.  DEFINITIONS

As used in this Agreement, the following terms shall have meanings as set out below:

"City" is defined in the preamble of this Agreement and includes its successors and assigns.

"Contractor" is defined in the preamble of this Agreement and includes its successors.

"Director" shall mean the acting Executive Director of City's Department of Arts & Culture.

## II. TERM

2.1 Unless sooner terminated in accordance with the provisions of this Agreement, the term of this Agreement shall commence on April 1, 2023 and terminate on March 31, 2026.

## III.  SCOPE OF SERVICES

3.1    Contractor agrees to serve as the City's Poet Laureate.  The duty of the Poet Laureate is to promote poetry and the literary arts in San Antonio. Contractor will be tasked with developing innovative and inspiring public events and programs in conjunction with local organizations and the Department of Arts & Culture. Contractor will also make special appearances and attends various functions throughout the three-year term.  Specifically, Contractor shall provide the following services in exchange for the compensation described in Article IV. Compensation:

3.1.1   Assist Department of Arts & Culture in generating public interest in the arts;

3.1.2   Promote literacy in the community;

3.1.3   Preserve the art of poetry;

3.1.4   Participate in a minimum of two (2) City-sponsored public events, mutually selected by City and Contractor, during the three-year term (April 1, 2023 - March 31, 2026) of this Agreement;

3.1.5   Assist the Department of Arts & Culture in celebrating and inspiring the reading and writing of poetry in the community;

3.1.6   Assist the Department of Arts & Culture in developing a series of poetry programs and activities to celebrate San Antonio's people, places, and history;

3.1.7   Develop a single Poet Laureate Signature Initiative to be approved by the Department of Arts & Culture and to be planned, developed, and completed by February 28, 2025 ("Signature Initiative"); and

3.1.8   Present project plan outlining Signature Initiative that includes: project scope/concept; proposed timeline of Signature Initiative development including schedule of events and marketing initiatives; proposed budget; key partners (if applicable); and proposed location(s) (if applicable) no later than April 1, 2024 ("Project Plan"). Any changes required by City will be included by April 23, 2024.

3.1.9   Additionally, Contractor agrees to the following:

(a) Contractor agrees to be interviewed by any news outlets interested in interviews with the Poet Laureate;
(b) Contractor shall mention the Department of Arts & Culture in at least three positive social media posts, and whenever applicable in interviews/public appearances.

3.2   All work performed by Contractor under this Agreement shall be performed to the satisfaction of Director. The determination made by Director shall be final, binding and conclusive on all Parties. City shall be under no obligation to pay for any work performed by Contractor which is not satisfactory to Director. City shall have the right to terminate this Agreement, in accordance with Article VII. Termination, in whole or in part, should Contractor's work not be satisfactory to Director; however, City shall have no obligation to terminate and may withhold payment for any unsatisfactory work, as stated herein, even should City elect not to terminate.

## IV. COMPENSATION TO CONTRACTOR

4.1   In consideration of Contractor's performance in a satisfactory and efficient manner, as determined solely by Director, of all services and activities set forth in this Agreement, City agrees to pay Contractor an amount not to exceed $10,500.00 as total compensation. These funds shall be paid to Contractor as follows:

4.1.1  Contractor shall invoice City for $3,500.00 upon execution of this Agreement.

4.1.2 Contractor shall invoice City for a second payment in the amount of $3,500.00 upon submission of the Project Plan and acceptance by the City, including any changes requested by the City.

4.1.2 Contractor shall invoice City for a third and final payment in the amount of $3,500.00 on April 1, 2025.

4.1.4  City shall pay Contractor within thirty (30) days of the receipt of such invoices for all sums due under this Agreement, subject to Section 3.2.

4.1.5  Upon early termination of this Agreement, Contractor shall return all unearned funds within fifteen (15) days of such termination.

4.2 No additional fees or expenses of Contractor shall be charged by Contractor nor be payable by City. The Parties agree that all compensable expenses of Contractor have been provided for in the total payment to Contractor as specified in Section 4.1 above. Total payments to Contractor cannot exceed that amount set forth in Section 4.1 above, without prior approval and agreement of all Parties, evidenced in writing in accordance with Article XIV. Amendments.

4.3  City shall not be obligated or liable under this Agreement to any party, other than Contractor, for the payment of any monies or the provision of any goods or services.

### V. COPYRIGHT LICENSE

5.1 Contractor grants City a non-exclusive, perpetual, royalty-free license to utilize, reproduce and publish, in any medium, any and all of Contractor's poems for the promotion of poetry, the arts and tourism in San Antonio.   This license includes the use of any and all such poems in Contractor's Signature Initiative, which will be coordinated by the Parties at a later date.

### VI. RECORDS RETENTION

6.1 Contractor and its subcontractors, if any, shall properly, accurately and completely maintain all documents, papers, and records, and other evidence pertaining to the services rendered under this Agreement ("documents"), and shall make such materials available to the City at their respective offices, at all reasonable times and as often as City may deem necessary during the Agreement period, including any extension or renewal hereof, and the record retention period established herein, for purposes of  audit, inspection, examination, and making excerpts or copies of same by City and any of its authorized representatives.

6.2 Contractor shall retain any and all documents produced as a result of services provided under this Agreement for a period of four (4) years ("retention period") from the date of termination of the Agreement. If, at the end of the retention period, there is litigation or other questions arising from, involving or concerning this documentation or the services provided hereunder, Contractor shall retain the records until the resolution of such litigation or other such

3

questions. Contractor acknowledges and agrees that City shall have access to any and all such documents at any and all times, as deemed necessary by City, during said retention period. City may, at its election, require Contractor to return said documents to City prior to or at the conclusion of said retention.

6.3 Contractor shall notify City, immediately, in the event Contractor receives any requests for information from a third party, which pertain to the documentation and records referenced herein. Contractor understands and agrees that City will process and handle all such requests.

## VII. TERMINATION

7.1 For purposes of this Agreement, "termination" of this Agreement shall mean termination by expiration of the Agreement term as stated in Article II. Term, or earlier termination pursuant to any of its provisions.

7.2 <u>Termination Without Cause</u>. This Agreement may be terminated by either Party upon 10 calendar days written notice, which notice shall be provided in accordance with Article VIII. Notice.

7.3 <u>Termination For Cause</u>. Upon written notice, which notice shall be provided in accordance with Article VIII. Notice, City may terminate this Agreement as of the date provided in the notice, in whole or in part, upon the occurrence of the following event, which shall constitute an Event for Cause under this Agreement:

> 7.3.1 The sale, transfer, pledge, conveyance or assignment of this Agreement without prior approval, as provided in Article XI. Assignment and Subcontracting.

7.4 <u>Defaults With Opportunity for Cure.</u> Should Contractor default in the performance of this Agreement in a manner stated in this Section, it shall be considered an event of default. City shall deliver written notice of said default specifying such matter(s) in default. Contractor shall have fifteen (15) calendar days after receipt of the written notice, in accordance with Article VIII. Notice, to cure such default. If Contractor fails to cure the default within such fifteen-day cure period, City shall have the right, without further notice, to terminate this Agreement in whole or in part as City deems appropriate, and to contract with another contractor to complete the work required in this Agreement. City shall also have the right to offset the cost of said new Agreement with a new contractor against Contractor's future or unpaid invoice(s), subject to the duty on the part of City to mitigate its losses to the extent required by law.

> 7.4.1 Failing to perform or failing to comply with any covenant herein required; or
> 7.4.2 Performing unsatisfactorily

7.5 <u>Termination By Law.</u> If any state or federal law or regulation is enacted or promulgated which prohibits the performance of any of the duties herein, or, if any law is interpreted to prohibit such performance, this Agreement shall automatically terminate as of the effective date of such prohibition.

7.6     Regardless of how this Agreement is terminated, Contractor shall affect an orderly transfer to City or to such person(s) or firm(s) as the City may designate, at no additional cost to City, all completed or partially completed documents, papers, records, charts, reports, and any other materials or information produced as a result of or pertaining to the services rendered by Contractor, or provided to Contractor**,** hereunder, regardless of storage medium, if so requested by City, or shall otherwise be retained by Contractor in accordance with Article VI. Records Retention.  Any record transfer shall be completed within thirty (30) calendar days of a written request by City and shall be completed at Contractor's sole cost and expense. Payment of compensation due or to become due to Contractor is conditioned upon delivery of all such documents, if requested.

7.7      Within forty-five (45) calendar days of the effective date of completion, termination or expiration of this Agreement, Contractor shall submit to City its claims, in detail, for the monies owed by City for services performed under this Agreement through the effective date of termination. Failure by Contractor to submit its claims within said forty-five (45) calendar days shall negate any liability on the part of City and constitute a **Waiver** by Contractor of any and all right or claims to collect moneys that Contractor may rightfully be otherwise entitled to for services performed pursuant to this Agreement.

7.8     Upon the effective date of expiration or termination of this Agreement, Contractor shall cease all operations of work being performed by Contractor or any of its subcontractors pursuant to this Agreement.

7.9     <u>Termination not sole remedy.</u>   In no event shall City's action of terminating this Agreement, whether for cause or otherwise, be deemed an election of City's remedies, nor shall such termination limit, in any way, at law or at equity, City's right to seek damages from or otherwise pursue Contractor for any default or other action.

## VIII. NOTICE

8.1 Except where the terms of this Agreement expressly provide otherwise, any election, notice or communication required or permitted to be given under this Agreement shall be in writing and deemed to have been duly given if and when delivered personally (with receipt acknowledged), or three (3) days after depositing same in the U.S. mail, first class, with proper postage prepaid, or upon receipt if sending the same by certified mail, return receipt requested, or upon receipt when sent by a commercial courier service (such as Federal Express or DHL Worldwide Express) for expedited delivery to be confirmed in writing by such courier, at the addresses set forth below or to such other address as either Party may from time to time designate in writing.

<u>If intended for City, to:</u>            City of San Antonio
                                  Department of Arts & Culture
                                  P.O. Box 839966
                                  San Antonio, Texas 78283

<u>If intended for Contractor, to:</u>       Nephtali De Leon

2023-2026 Poet Laureate
P.O. Box 23315
San Antonio, TX 78223

## IX.  LIABILITY

9.1   Nothing contained in this Agreement shall be construed as limiting the extent to which Contractor may be held responsible for payments of damages to persons or property resulting from Contractor's or its subcontractors' performance of the work covered under this Agreement.

9.2   Contractor and any subcontractors are responsible for all damage to their own equipment and/or property.

## X. INDEMNIFICATION

10.1 **CONTRACTOR covenants and agrees to FULLY INDEMNIFY and HOLD HARMLESS, CITY and the elected officials, employees, officers, directors, volunteers and representatives of CITY, individually and collectively, from and against any and all costs, claims, liens, damages, losses, expenses, fees, fines, penalties, proceedings, actions, demands, causes of action, liability and suits of any kind and nature, including but not limited to, personal or bodily injury, death and property damage, made upon CITY directly or indirectly arising out of, resulting from or related to CONTRACTOR'S activities under this AGREEMENT, including any acts or omissions of CONTRACTOR, any agent, officer, director, representative, employee, contractor or subcontractor of CONTRACTOR, and their respective officers, agents employees, directors and representatives while in the exercise of performance of the rights or duties under this AGREEMENT. The indemnity provided for in this paragraph shall not apply to any liability resulting from the sole negligence of CITY, its officers or employees, in instances where such negligence causes personal injury, death, or property damage. IN THE EVENT CONTRACTOR AND CITY ARE FOUND JOINTLY LIABLE BY A COURT OF COMPETENT JURISDICTION, LIABILITY SHALL BE APPORTIONED COMPARATIVELY IN ACCORDANCE WITH THE LAWS FOR THE STATE OF TEXAS, WITHOUT, HOWEVER, WAIVING ANY GOVERNMENTAL IMMUNITY AVAILABLE TO THE CITY UNDER TEXAS LAW AND WITHOUT WAIVING ANY DEFENSES OF THE PARTIES UNDER TEXAS LAW.**

**The provisions of this INDEMNIFICATION are solely for the benefit of the Parties and not intended to create or grant any rights, contractual or otherwise, to any other person or entity.**

**CONTRACTOR shall advise CITY in writing within 24 hours of any claim or demand against CITY or CONTRACTOR known to CONTRACTOR related to or arising out of CONTRACTOR'S activities under this AGREEMENT.**

10.2   <u>Defense Counsel</u> - City shall have the right to select or to approve defense counsel to be retained by Contractor in fulfilling its obligation to defend and indemnify City, unless such

right is expressly waived by City in writing. Contractor shall retain City-approved defense counsel within seven (7) business days of City's written notice that City is invoking its right to indemnification under this Agreement. If Contractor fails to retain counsel within such time period, City shall have the right to retain defense counsel on its own behalf, and Contractor shall be liable for all costs incurred by City. City shall also have the right, at its option, to be represented by advisory counsel of its own selection and at its own expense, without waiving the foregoing.

10.3 <u>Employee Litigation</u> – In any and all claims against any party indemnified under this Agreement by any employee of Contractor, any subcontractor, anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable, the indemnification obligation provided shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for Contractor or any subcontractor under worker's compensation or other employee benefit acts.

10.4 <u>Trademarked and Copyrighted Usage</u>  Contractor agrees to obtain all necessary licenses and take all other necessary steps to insure that all use of trademarked and/or copyrighted materials complies with United States and any other applicable trademark and copyright law.

10.5 <u>Trademark and Copyright Indemnification</u>  **Contractor agrees to FULLY INDEMNIFY, DEFEND and HOLD HARMLESS, at Contractor's own expense, City, its officials, agents and employees from any and all liability arising from copyright infringement and/or consequential damages that others may suffer as a result of the use by Contractor or its designee of trademarked and/or copyrighted materials in the services provided under this Agreement.**

## XI.  ASSIGNMENT AND SUBCONTRACTING

11.1 Contractor shall supply qualified personnel as may be necessary to complete the work to be performed under this Agreement.  Persons retained to perform work pursuant to this Agreement shall be the employees or subcontractors of Contractor. Contractor, its employees or its subcontractors shall perform all necessary work.

11.2  The use of any subcontractor(s) require the prior written approval of Director.

11.3  Any work or services approved for subcontracting hereunder shall be subcontracted only by written contract and, unless specific waiver is granted in writing by the City, shall be subject by its terms to each and every provision of this Agreement. Compliance by subcontractors with this Agreement shall be the responsibility of Contractor. City shall in no event be obligated to any third party, including any subcontractor of Contractor**,** for performance of services or payment of fees.

11.4  Except as otherwise stated in this Agreement, Contractor may not sell, assign, pledge, transfer or convey any interest in this Agreement, nor delegate the performance of any duties hereunder, by transfer, by subcontracting or any other means, without the prior written consent of Director. As a condition of such consent, if such consent is granted, Contractor shall

remain liable for completion of the services outlined in this Agreement in the event of default by the successor Contractor, assignee, transferee or subcontractor.

11.5   Any attempt to transfer, pledge or otherwise assign this Agreement without said written approval, shall be void ab initio and shall confer no rights upon any third person.  Should Contractor assign, transfer, convey, delegate, or otherwise dispose of any part of all or any part of its right, title or interest in this Agreement, City may, at its option, cancel this Agreement and all rights, titles and interest of Contractor shall thereupon cease and terminate, in accordance with Article VII. Termination, notwithstanding any other remedy available to City under this Agreement. The violation of this provision by Contractor shall in no event release Contractor from any obligation under the terms of this Agreement, nor shall it relieve or release Contractor from the payment of any damages to City, which City sustains as a result of such violation.

## XII.   INDEPENDENT CONTRACTOR

12.1   Contractor covenants and agrees that he or she is an independent contractor and not an officer, agent, servant or employee of City; that Contractor shall have exclusive control of and exclusive right to control the details of the work performed hereunder and all persons performing same, and shall be responsible for the acts and omissions of its officers, agents, employees, contractors, subcontractors and consultants; that the doctrine of respondent superior shall not apply as between City and Contractor, its officers, agents, employees, contractors, subcontractors and consultants, and nothing herein shall be construed as creating the relationship of employer-employee, principal-agent, partners or joint venturers between City and Contractor. The Parties understand and agree that City shall not be liable for any claims which may be asserted by any third party occurring in connection with the services to be performed by Contractor under this Agreement and that the Contractor has no authority to bind City.

## XIII.   CONFLICT OF INTEREST

13.1   The Charter of the City of San Antonio and its Ethics Code prohibit a City officer or employee, as defined in Section 2-52 of the Ethics Code, from having a financial interest in any contract with the City or any City agency such as city owned utilities.  An officer or employee has a "prohibited financial interest" in a contract with City or in the sale to City of land, materials, supplies or service, if any of the following individual(s) or entities is a party to the contract or sale:

(i)  a City officer or employee;

(ii)   his parent, child or spouse;

(iii)  a business entity in which the officer or employee, or his parent, child or spouse owns (i) 10% or more of the voting stock or shares of the business entity, or (ii) 10% or more of the fair market value of the business entity;

(iv)  a business entity in which any individual or entity above listed is a (i) subcontractor on a City contract, (ii) a partner, or (iii) a parent or subsidiary business entity.

8

13.2  Contractor warrants and certifies as follows:

(i)  Contractor is not an officer nor employee of City.

(ii)  Contractor has tendered to City a Contracts Disclosure Statement in compliance with City's Ethics Code.

13.3  Contractor acknowledges that City's reliance on the above warranties and certifications is reasonable.

## XIV.  AMENDMENTS

14.1  Except where the terms of this Agreement expressly provide otherwise, any alterations, additions, or deletions to the terms, shall be effected by amendment, in writing, executed by both City and Contractor, when required.

## XV.  SEVERABILITY

15.1  If any clause or provision of this Agreement is held invalid, illegal or unenforceable under present or future federal, state or local laws, including but not limited to the City Charter, City Code, or ordinances of the City of San Antonio, Texas, then and in that event it is the intention of the Parties that such invalidity, illegality or unenforceability shall not affect any other clause or provision hereof and that the remainder of this Agreement shall be construed as if such invalid, illegal or unenforceable clause or provision was never contained; it is also the intention of the Parties that in lieu of each clause or provision of this Agreement that is invalid, illegal, or unenforceable, there be added as a part of the Agreement a clause or provision as similar in terms to such invalid, illegal or unenforceable clause or provision as may be possible, legal, valid and enforceable.

## XVI.  LICENSES/CERTIFICATIONS

16.1  Contractor warrants and certifies that Contractor and any other person designated to provide services has the requisite training, license and/or certification to provide said services, and meets all competence standards promulgated by all other authoritative bodies, as applicable to the services provided under this Agreement.

## XVII.  COMPLIANCE

17.1  Contractor shall provide and perform all services required under this Agreement in compliance with all applicable federal, state and local laws, rules and regulations.

17.2  Non-Discrimination.  As a party to this Agreement, Contractor understands and agrees to comply with the *Non-Discrimination Policy* of City contained in Chapter 2, Article X of the City Code and further, shall not discriminate on the basis of race, color, religion, national origin, sex, sexual orientation, gender identity, veteran status, age or disability, unless exempted by state or federal law, or as otherwise established in this Agreement.

17.3   It is the policy of the City of San Antonio to provide a work environment to all employees and applicants free of ***employment discrimination, harassment*** and ***sexual harassment.*** In addition, any behavior, regardless of intent or severity, that could be deemed inappropriate workplace behavior, but may not legally constitute ***employment discrimination, harassment,*** or ***sexual harassment,*** is prohibited. ***Harassment*** and ***sexual harassment*** are forms of discrimination that violate Title VII of the Civil Rights Act of 1964, (as amended), the Civil Rights Act of 1991, the American with Disabilities Act (ADA), the Age Discrimination in Employment Act (ADEA), and related State of Texas statutes. Retaliation against employees for opposing alleged ***employment discrimination, harassment,*** or ***sexual harassment*** or for filing a charge, testifying, assisting, or participating in any manner in an Equal Employment Opportunity (EEO) investigation, proceeding, or hearing is prohibited.

## XVIII.  NONWAIVER OF PERFORMANCE

18.1   Unless otherwise specifically provided for in this Agreement, a waiver by either Party of a breach of any of the terms, conditions, covenants or guarantees of this Agreement shall not be construed or held to be a waiver of any succeeding or preceding breach of the same or any other term, condition, covenant or guarantee n contained in this Agreement. Further, any failure of either Party to insist in any one or more cases upon the strict performance of any of the covenants of this Agreement, or to exercise any option herein contained, shall in no event be construed as a waiver or relinquishment for the future of such covenant or option. In fact, no waiver, change, modification or discharge by either Party of any provision of this Agreement shall be deemed to have been made or shall be effective unless expressed in writing and signed by the Parties in accordance with Article XIV. Amendments. No act or omission by a Party shall in any manner impair or prejudice any right, power, privilege, or remedy available to that Party under this Agreement or by law or in equity.

## XIX. LAW APPLICABLE

19.1   **THIS AGREEMENT SHALL BE CONSTRUED UNDER AND IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS AND ALL OBLIGATIONS OF THE PARTIES CREATED HEREUNDER ARE PERFORMABLE IN BEXAR COUNTY, TEXAS.**

19.2   Any legal action or proceeding brought or maintained, directly or indirectly, as a result of this Agreement shall be heard and determined in the City of San Antonio, Bexar County, Texas.

## XX.  LEGAL AUTHORITY

20.1   Contractor represents, warrants, assures and guarantees that he has full legal authority to execute this Agreement and to bind Contractor to all of the terms, conditions, provisions and obligations contained.

## XXI. PARTIES BOUND

21.1  This Agreement shall be binding on and inure to the benefit of the Parties and their respective heirs, executors, administrators, legal representatives, and successors and assigns, except as otherwise expressly provided for in this Agreement.

## XXII. CAPTIONS

22.1  The captions contained in this Agreement are for convenience of reference only, and in no way limit or enlarge the terms and/or conditions of this Agreement.

## XXIII. ENTIRE AGREEMENT

23.1  This Agreement constitutes the final and entire agreement between the Parties and contain all of the terms and conditions agreed upon. No other agreements, oral or otherwise, regarding the subject matter of this Agreement shall be deemed to exist or to bind the Parties, unless same be in writing, dated subsequent to the effective date of this Agreement, and duly executed by the Parties, in accordance with Article XIV. Amendments.

**EXECUTED** and **AGREED** to be effective April 1, 2023.

CITY:

*Krystal Jones*
Krystal Jones
Executive Director
Department of Arts & Culture

CONTRACTOR:

*Nephtali De Leon*
Nephtali De Leon

Approved as to Form:
*Lisa Biediger for*
City Attorney
By electronic signature